**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle Stevens,<br><br>           Plaintiff,<br><br>v.<br><br>State of Arizona, et al.,<br><br>           Defendants. | No. CV-23-00770-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 9.) Plaintiff filed a response (Doc. 16), to which Defendants replied (Doc. 21). After considering the parties' arguments and relevant case law, the Court will grant the Motion.

**I.     BACKGROUND**

Plaintiff and Nicholas Polich ("Father") divorced in 2018. (Doc. 1-3 at 33.) Between 2018 and 2021, Father made multiple accusations that Plaintiff had physically and/or mentally abused the couple's two minor children, O.P. and Q.P. (Doc. 14 at 2.) In November 2021, Father told Dr. Shannon Fore, Q.P.'s counselor, that he had a recording of Q.P. stating that someone had touched his "private parts." (*Id.*) As a mandatory reporter, Dr. Fore contacted the Gilbert Police Department ("GPD"). During the subsequent investigation, GPD interviewed Father and the two children. In his interview, Father again stated that he had recordings of his two minor children disclosing possible acts of child molestation, and that these acts likely occurred at Plaintiff's house. (*Id.*) Q.P. did not

report any inappropriate touching during his interview. (*Id.*) However, O.P. described Plaintiff touching his "privates in the front and back" on three occasions. (Doc. 1-3 at 34.) O.P also disclosed that his maternal grandfather, Plaintiff's father, also "rubbed his privates in the front and back." (*Id.*)

The case was then transferred to the Chandler Police Department ("CPD"). (Doc. 9 at 2.) On November 17, 2021, CPD arranged a confrontation call between Father's mother, the children's maternal grandmother, and Plaintiff. (*Id.*) An employee from the Office of Child Welfare Investigations ("OCWI")—a branch of the Arizona Department of Child Services ("DCS") —was also present during the call. On the call, Father's mother attempted to elicit incriminating statements from Plaintiff. (Doc. 1-3 at 35.) Plaintiff was unaware the call was being recorded and vehemently denied all allegations. (Doc. 14 at 2.) Later that day, CPD Detective Homan interviewed Plaintiff in-person at her residence. (*Id.*) Robert Floring, a DCS employee, accompanied Homan. (*Id.* at 2–3.) Plaintiff again denied the allegations and told Homan and Floring that Father "had a history of making false allegations against her for child abuse and neglect due to their ongoing custody battle." (*Id.* at 3.) CPD concluded there was no probable cause to arrest or charge Plaintiff and closed the case. (*Id.*)

However, Floring then instituted his own review of O.P.'s allegations. (*Id.*) On November 19, 2021, Floring attended a hearing in family court meant to determine Plaintiff's custody rights of her two minor children. (*Id.*) At this hearing, Floring testified that "there was a descriptor" in the police report in which O.P. "had described his mother as touching herself and her genital area while this was going on." Plaintiff contends that this constituted false testimony that is unsupported by the police report. (*Id.*) After this hearing, Floring gained access to all of Dr. Fore's psychotherapy notes, none of which included any information regarding the "descriptor" he mentioned at the hearing.. (*Id.*) On November 22, 2021, as a result of this hearing, the family court entered temporary orders granting Father temporary sole legal decision-making and 4.5 hours of supervised parenting time to Mother per week. (Doc. 20-1.)

On January 22, 2022, Floring mailed Plaintiff a letter stating that based on his investigation, he was proposing to substantiate the allegations of O.P.'s disclosure. (Doc. 14 at 3.) Subsequently, on April 11, 2022, and based on Floring's investigation and proposed finding, DCS entered a finding that Plaintiff engaged in sexual contact with O.P. between 2020 and 2021. (*Id.*) As part of the ongoing child custody battle, Floring was deposed. Under oath, he admitted that he did not have any training on child sexual abuse claims or have the qualifications to make determinations regarding improper sexual touch or child abuse. (*Id.*) Even so, Floring never amended his findings. (*Id.*)

Ultimately, the family court held another hearing to resolve several outstanding issues in the case on July 10, 2023. On September 11, 2023, the family court issued its order for legal decision making, parenting time and child support. In this order, and based on the credible evidence and testimony presented, the family court granted Plaintiff and Father 50/50 custody, joint legal decision-making authority, and gave Plaintiff presumptive decision making authority. The court also noted that Floring's allegations were subsequently unsubstantiated.

However, before this final decision, Plaintiff sued, alleging three counts in her First Amended Complaint ("FAC") dated February 3, 2023; (1) negligence/negligence per se, (2) negligent training, hiring, and supervision, and (3) a violation of 42 U.S.C. § 1983. (Doc. 1-3 at 37–39.) Defendants removed to federal court (Doc. 1.) Defendants now seek to dismiss Plaintiff's FAC with prejudice. (Doc. 9 at 1.) Defendants argue that "(1) Plaintiff failed to comply with Fed. R. Civ. P. 8 and failed to state a claim, (2) DCS is a non-jural entity, (3) Plaintiff failed to timely serve a Notice of Claim ("NOC") for Counts I and II, (4) Floring possesses absolute and/or qualified immunity as to Count III, and (5) Count III is an impermissible appeal of a state family court judgment." (*Id.* at 1–2.)

## II.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice

of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This requirement is met if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Lockyer*, 568 F.3d at 1067. However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

**III. DISCUSSION**

### A. Abstention

As a threshold issue, the Court must first analyze the applicability of both *Younger* and *Rooker Feldman* abstention. *See Younger v. Harris*, 401 U.S. 37, 44 (1971); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923).

*Younger* abstention is grounded in federal-state comity and proper respect for the sovereignty of state courts. *See Younger*, 401 U.S. at 44; *Page v. King*, 932 F.3d 898, 901 (9th Cir. 2019). *Younger* abstention is required when the following three factors are met: (1) state proceedings are ongoing, (2) the state proceedings implicate important state interests, and (3) the state proceedings afford an adequate opportunity to pursue federal claims in the ongoing state proceeding. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799-801 (9th Cir. 2001). A proceeding may be entitled to abstention where there is either state criminal prosecutions, certain civil enforcement proceedings, or civil proceedings that invoke the state courts' ability to perform their judicial functions. *Applied Underwriters, Inc. v. Lara*, 37 F.4th 579, 587–88 (9th Cir. 2022).

Additionally, "once the three *Middlesex* elements are satisfied, the court does not automatically abstain, but abstains only if there is a *Younger*-based *reason* to abstain—i.e., if the court's action would enjoin, or have the practical effect of enjoining, ongoing state court proceedings." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007). Where these conditions are met, a federal court must not interfere with the ongoing state proceeding unless extraordinary circumstances exist—such as a threat of irreparable injury that is "both great and immediate." *Younger*, 401 U.S. at 46 (internal citation omitted). Extraordinary circumstances may also include bad faith or harassment on the part of the state. *Middlesex County Ethics Comm.*, 457 U.S. at 437.

*Younger* abstention applies to both trial and direct appeal proceedings. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369 (1989) (holding that the state's "trial-and-appeals process is treated as a unitary system, and for a federal court

to disrupt its integrity by intervening in mid-process would demonstrate a lack of respect for the State as a sovereign."); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975). Additionally, in the Ninth Circuit, *Younger* principles apply to actions at law. *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004).

Here, the family court entered its final order on legal decision making, parenting time and child support on September 11, 2023. The court then entered its final judgment on attorney fees on December 7, 2023, and noted that there were no further claims or issues for the court to decide. This minute entry was entered as a formal order of the Court pursuant to Rule 78(c) of the Arizona Rules of Family Law Procedure. That rule provides that "[A] judgment as to all claims, issues, and parties is not appealable unless the judgment recites that no further matters remain pending and that the judgment is entered under Rule 78(c)." Ariz. R. Family L. P. 78(c). Therefore, the December 7, 2023 served as the final, formal order of the family court proceedings. On December 19, 2023, Father filed a Notice of Appeal, stating that he is appealing the court's September 11, 2023 order on legal decision making, parenting time and child support. The Court has reviewed each of these orders.

At the time the relevant briefs here were filed, state family court proceedings were ongoing. (*See* Doc. 9 at 14; Doc. 16 at 15–16.) The parties' arguments center around that posture. Defendants argue that the *Younger* doctrine applies because the state family court proceedings—which implicate the state's interest in family relations—are ongoing. (Doc. 9 at 14.) Defendants also argue that Plaintiff did not allege or show any fact to show that Plaintiff did not have an adequate forum in state court. (*Id.* at 14–15.) Defendants further argue that the FAC "fails to plead bad faith, harassment, or other extraordinary circumstances" that would restrict the application of *Younger* abstention. (Doc. 21 at 12–13.) Plaintiff counters that the doctrine is inapplicable because this federal action does not request the Court to interfere with the state case. (Doc. 16 at 16.) Plaintiff attempts to draw a distinction between this federal action and the current state case, and also claims that *Younger* may only apply to declaratory or injunctive relief with respect to a state court

- 6 -

action. (*Id.*)

Here, the elements of *Younger* are not satisfied. First, there is an ongoing state judicial proceeding by way of the pending appeal in the Arizona Court of Appeals. Second, important state interests are implicated. *Moore v. Simms*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern."). And third, there remains an adequate opportunity to raise constitutional challenges in the state appellate process. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) (a federal court should assume that state procedures will afford an adequate opportunity for consideration of constitutional claims "in the absence of unambiguous authority to the contrary"). Defendants have not explained how this action would enjoin or have the practical effect of enjoining Father's ongoing state appeal. This action for damages will not be impacted by Father's current appeal of the final judgment of the family court. Therefore, the Court is lacking a *Younger*-based reason to abstain. *See Roden*, 495 F.3d at 1149.

The *Rooker-Feldman* doctrine is also inapplicable. "Under *Rooker-Feldman*, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). "*Rooker* held that when a losing plaintiff in state court brings a suit in federal district court asserting as legal wrongs the allegedly erroneous legal rulings of the state court and seeks to vacate or set aside the judgment of that court, the federal suit is a forbidden de facto appeal." *Id.* at 1156. "*Rooker-Feldman* is a powerful doctrine that prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing de facto appeals from state-court judgements" when they are "'inextricably intertwined' with the state court's decision." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) (quoting *Feldman*, 460 U.S. 462 at 483). Though the doctrine is not constitutional in nature, it draws support from the principles of federalism and comity by respecting the finality of state court judgments. *Id.* at 902; *see also In re Gruntz*, 202 F.3d 1074, 1078, 1086 n.12 (9th Cir. 2000).

Defendants argue that Plaintiff is complaining of "decisions made, endorsed, or

approved by the state family court" in this lawsuit and thereby runs afoul of *Rooker-Feldman*. (Doc. 9 at 15.) Plaintiff counters that this lawsuit does not claim an injury by a state court judgment and does not seek to challenge it. (Doc. 16 at 17.) The Court agrees with Plaintiff. In this analysis, the Court must look to the relief sought by the Plaintiff in federal court. *See Bianchi*, 334 F.3d at 900. Here, Plaintiff is not appealing a state court's final judgment and is not asserting that the family court judgment was an erroneous legal ruling. Rather, Plaintiff pleads an alleged legal injury caused by adverse parties—the State of Arizona, DCS, and Floring. This distinction is critical, and it does not permit application of the *Rooker-Feldman* doctrine.

The Court finds that neither *Younger* nor *Rooker-Feldman* abstention is applicable. Accordingly, the Court will retain jurisdiction and decide this Motion.

### B. DCS is a Non-Jural Entity

The next question pertains to whether DCS is a non-jural entity that lacks the capacity to sue and be sued. This is also a question of Arizona law. *See* Fed. R. Civ. P. 17(b)(3). Defendants argue that DCS is a non-jural entity and therefore must be dismissed as a Defendant. (Doc. 9 at 8–9.) In their response, Plaintiff stipulates to this point. (Doc. 16 at 11.)

In Arizona, governmental entities "have no inherent power and possess only those powers and duties delegated to them by their enabling statutes." *Braillard v. Maricopa Cnty.*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010). Therefore, "a governmental entity may be sued only if the legislature has so provided." *Id.* The statutes that created DCS do not provide for the ability for DCS to sue or be sued. *See* Ariz. Rev. Stat. §§ 8-451 to -892; *East v. Arizona*, No. CV-17-01685-PHX-GMS, 2017 WL 6820141, at *2 (D. Ariz. Aug. 23, 2017). The Court also notes that DCS is not subject to *Monell* liability because it is a state entity, not a municipal entity. *See Neeley v. Arizona*, No. CV-19-05899-PHX-DJH, 2022 WL 44676, at *7–8 (D. Ariz. Jan. 5, 2022).

In sum, DCS lacks the capacity to be sued. Therefore, Plaintiff's stipulation is proper. The Court will dismiss DCS as a Defendant and dismiss the claims against DCS

with prejudice.  *See East*, 2017 WL 6820141, at *2.

### C. The State of Arizona and § 1983

Relatedly, neither DCS nor the State of Arizona are proper Defendants for Plaintiff's § 1983 claim.  Under § 1983, "[e]very *person* who, under color of [law] . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to the party injured."  42 U.S.C. § 1983 (emphasis added).  However, a state or state agency is not a "person" within the meaning of § 1983 and therefore is not subject to money damages in lawsuits alleging § 1983 violations.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58 at 65–66, 70–71.

The FAC appears to plead the § 1983 claim against Floring, DCS, and the State of Arizona.  (Doc. 1-3 at 38–39.)  However, Plaintiff's response to this Motion appears to only subject Floring to this claim.  (Doc. 16 at 10.)  Regardless, this claim as plead constitutes a suit against the State.  Because the State of Arizona is not a "person" for purposes of § 1983, this claim is dismissed as to the State.  *See Will*, 491 U.S. at 65–66.

### D. Notice of Claim Issues

1. *Service of the Notice of Claim*

Under Arizona law, a plaintiff must file a notice of claim with the public employee within 180 days of the incident from which the claim arose.  Ariz. Rev. Stat. § 12-821.01(A).  The plaintiff must also give notice to the public employee's employer.  *Crum v. Superior Court*, 922 P.2d 316, 317 (Ariz. Ct. App. 1996.)  The statute provides, in relevant part:

> Persons who have claims against a public entity, public school or a *public employee* shall file claims with the person or persons authorized to accept service for the public entity public school or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues . . . Any claim that is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.

Ariz. Rev. Stat. § 12-821.01(A) (emphasis added).  The Arizona Rules of Civil Procedure outline the requirements of service of process of an individual:

- 9 -

> [A]n individual may be served by: (1) delivering a copy of the summons and the pleading being served to that person individually; (2) leaving a copy of each at that individual's dwelling or usual place of abode with someone of suitable ager and discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Ariz. R. Civ. P. 4.1(d). Plaintiffs who do not strictly comply with § 12-821.01(A) are barred from bringing suit. *Harris v. Cochise Health Sys.*, 160 P.3d 223, 230 (Ariz. Ct. App. 2007) ("[c]ompliance with the notice provision of § 12-821.01(A) is a mandatory and essential prerequisite to such an action"). "Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements of A.R.S. § 12-821.01(A)." *Falcon ex rel. Sandoval v. Maricopa Cnty.*, 144 P.3d 1254, 1256 (Ariz. Ct. App. 2006). Asserting that a plaintiff has not complied with the notice of claim statute is an affirmative defense. *Lee v. State*, 242 P.3d 175, 178 (Ariz. Ct. App. 2010). Therefore, the defendant bears the burden of proving plaintiff's failure to comply. *See Pfeil v. Smith*, 900 P.2d 12, 14 (Ariz. Ct. App. 1995).

Defendants argue that Plaintiff did not personally serve the notice of claim on Floring, thereby statutorily barring any state law claim against him. (Doc. 9 at 10.) Plaintiff argues that § 12-821.01(A) does not require personal service and that Plaintiff's service of Floring by mail was sufficient. (Doc. 16 at 11.) Plaintiff cites to *Lee v. State*, 182 P.3d 1169 (Ariz. 2008) to support this contention. (*Id.*) However, *Lee* is distinguishable. In *Lee*, the Arizona Supreme Court interpreted the notice of claim statute and the relevant rules for serving a corporation, partnership, or other unincorporated association. 182 P.3d at 1170–72. These rules extend to government agencies. *Id.* at 1172. The holding in *Lee* "was not tethered to the proper method of service set out in the Arizona Rules of Civil Procedure but, rather, to the Arizona Rules' prescriptions as to who is authorized to accept service for a public entity or employee." *Leibel v. City of Buckeye*, 556 F. Supp. 3d 1042, 1078 (D. Ariz. 2021). In short, *Lee* simply did not interpret the notice of claim statute or the Arizona Rules of Civil Procedure as they pertain to service on an *individual*. Rather, this case is akin to *Machowicz v. Maricopa County.*, No. CV-21-

00316-PHX-JJT, 2021 WL 4319206 (D. Ariz. Sept. 23, 2021), in which another court in this district held—under similar facts—that a public employee, like Floring, must be personally served in accordance with Arizona Rule of Civil Procedure 4.1(d) to satisfy the notice of claim statute. *Id.* at *3–4; *see also Reeves v. City of Show Low*, No. CV-08-8157-PCT-PGR, 2009 WL 1125414, at *2 (D. Ariz. Apr. 27, 2009) (same).

Additionally, the parties dispute whether Floring ever received the notice of claim in the mail. (Doc. 9-1 at 3; Doc. 16 at 11.) But the issue is not whether Floring received the notice of claim in the mail—it is whether he was personally served as an individual as required by Arizona Rule of Civil Procedure 4.1(d). Defendant Floring attested that he was never personally served and never authorized anyone to accept service on his behalf. (Doc. 9-1 at 3.) Plaintiff offers no counterargument other than her reliance on service by mail. (*See* Doc. 16 at 11.) Accordingly, the Court finds that Plaintiff did not comply with the notice of claim requirement as to Defendant Floring and therefore must dismiss the state law claims against Floring. *See Wostrel v. Arizona*, No. CV-22-00312-PHX-DLR, 2023 WL 2308417, at *6 (D. Ariz. Mar. 1, 2023).

2. *Timeliness of the Notice of Claim*

Defendants also argue that the notice of claim served on the State and Florence was untimely and therefore bars the claims. (Doc. 9 at 10.) Given the Court's finding that the individual claims against Florence are statutorily barred due to lack of proper service, the Court need not address the parties' arguments regarding the timeliness of the notice of claim as to Floring. (*See* Doc. 9 at 10–11; Doc. 16 at 11–12.) However, the Court will examine this issue as it pertains to the claims against the State.

The statute requires parties to file a notice of claim within 180 days after the cause of action accrues. Ariz. Rev. Stat. § 12-821.01(A). Any claim not served within this time limit is barred. *See Falcon ex rel. Sandoval*, 144 P.3d at 1256. Per the statute, an action accrues "when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that causes or contributed to the damage." Ariz. Rev. Stat. § 12-821.01(B). "The term accrual

is construed in accordance with the common law discovery rule, which provides that a cause of action accrues when a plaintiff discovers or reasonably should have discovered the injury was caused by the defendant's negligent conduct." *McCarthy v. Scottsdale Unified Sch. Dist. No. 48*, 409 F. Supp. 3d 789 (D. Ariz. 2019) (cleaned up). "[I]t is not enough that a plaintiff comprehends a 'what'; there must also be a reason to connect the 'what' to a particular 'who' in such a way that a reasonable person would be on notice to investigate whether the injury might result from fault." *Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002).

Defendants argue that the claim accrued on November 19, 2021—the date which Floring testified at the family court hearing. (Doc. 9 at 10–11.) Therefore, Defendants contend that the last day of service for the notice of claim was May 18, 2022. (Doc. 21 at 7.) Defendants also point out that even if the Court were to use the date the court issued its temporary order awarding sole legal decision making to Father—November 22, 2021—the notice of claim is still untimely. (*Id.*) Plaintiff counters that the claim accrued on April 11, 2022, when DCS entered a finding based on Floring's investigation and recommendation that Plaintiff engaged in "sexual contact" with O.P. between 2020 and 2021. (Doc. 16 at 12.) Alternatively, Plaintiff argues that the claim could have accrued on January 28, 2022, when Floring informed Plaintiff that he was going to substantiate the allegations of O.P.'s disclosure. (*Id.*) Either of these dates would fall within the required 180-day period.

Here, the notice of claim was served on the State on June 10, 2022. (Doc. 16 at 12.) Therefore, the notice of claim would be timely if the claim accrued on or after December 12, 2021. The Court finds that November 22, 2021 is the proper accrual date for these claims. On this date, it is undisputed that Plaintiff became aware of the impact of the Floring's alleged false testimony. After all, Plaintiff contends that this testimony impacted the family court's decision regarding custody. (*See* Doc. 1-3 at 46 ¶ 57.) The harm, of course, is directly asserted in the FAC: "As a direct consequence of Floring's negligent, wrongful, and careless acts, Plaintiff was stripped of her parental rights to make decisions

for her two sons." (Doc. 1-3 at 46 ¶ 57.) The FAC continues, alleging: "Specifically, Plaintiff lost 50/50 custody of her sons and is now subjected to costly supervised visitation, paid by Plaintiff, of only six hours a week." (*Id.* ¶ 58.) The loss of legal decision making authority, 50/50 custody, and the imposition of supervised visitation was a direct result of the Court's order on November 22, 2021. (Doc. 20-1 at 3–4.) In short, on November 22, 2021, Plaintiff was able to comprehend the harm and connect that harm to a particular individual in a manner that put her on notice to investigate. *Walk*, 44 P.3d at 996. This fits squarely within the requirements of the statute's plain language. Ariz. Rev. Stat. § 12-821.01(B). Accordingly, Plaintiff was required to serve the notice of claim on or before May 21, 2022.

Moreover, determining November 22, 2021 as the accrual date comports with the allegations contained within the claims. Count I alleges that Floring negligently conducted his investigation. (*See* Doc. 1-3 at 44–46 ¶¶ 39–58.) In fact, the FAC details all the steps taken by Floring during this investigation. (*See id.*) Of course, this investigation culminated in Floring's testimony, which Plaintiff alleges was false. (*Id.* at 44–45 ¶¶ 42–43.) As to Count II, Plaintiff alleges that the State's hiring, training, and supervision was negligent, leading to Floring's allegedly poor investigation and false testimony. (*See id.* at 47 ¶¶ 65–69.) This again ties back to Floring's testimony and the resulting family court order.

In sum, Plaintiff failed to meet the notice of claim statute's requirements by failing to personally serve Defendant Floring and failing to serve the State of Arizona within the required time from accrual of her claims. Ariz. Rev. Stat. § 12-821.01(A)–(B). Accordingly, the Court will dismiss Counts I and II against Defendants Floring and the State of Arizona with prejudice.

**E. Immunity Analysis**

1. *Absolute Immunity*

The only remaining claim is Plaintiff's § 1983 claim against Floring. Plaintiff asserts that Floring "acting under color of state law, acted to deprive Plaintiff of her

constitutional right to be free from governmental interference with her children." (Doc. 1-3 at 48 ¶ 72.)

Defendants first argue that Floring is entitled to absolute immunity for this claim. (Doc. 9 at 11.) Specifically, Defendants argue that Floring testified in a family court hearing as a government witness and is therefore entitled to absolute immunity for his testimony under Supreme Court and Ninth Circuit case law—even if his testimony was false. (*Id.*) Plaintiff counters that this claim goes beyond Floring's testimony at the family court hearing and instead includes his "deposition testimony, his failure to thoroughly review the psychotherapy records, police reports, and history of the custody dispute, and his ultimate recommendation to substantiate the allegations of O.P.'s disclosure." (Doc. 16 at 13.) In turn, Plaintiff argues that Floring's deposition testimony coupled with his inactions do not fall within the protections of absolute immunity. (*Id.* at 14.)

Both private individuals and government officials who serve as witnesses have absolute immunity from civil damages under § 1983 with respect to their testimony. *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983); *see also Paine v. City of Lompoc*, 265 F.3d 975, 980 (9th Cir. 2001). Crucially, this immunity applies even where the witness commits perjury. *Briscoe*, 460 U.S. at 342–45. Moreover, in the Ninth Circuit, "social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." *Meyers v. Contra Costa County Dep't of Social Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987), *cert denied*, 484 U.S. 829 (1987). This immunity extends to testimony given at family court hearings, such as dependency or custody hearings. *See Nation v. Cholla*, 841 P.2d 1370, 1377 (Ariz. Ct. App. 1991).

The controlling case law is clear that Floring is granted absolute immunity for his testimony in family court. At the November 19, 2021 hearing, he functioned as a government witness. As such, Floring's testimony at the November 19, 2021 hearing is protected by absolute immunity from civil damages under § 1983—even if he perjured himself. *See Briscoe*, 460 U.S. at 326. However, the Court finds that absolute immunity

does not extend to Floring's actions outside of his testimony. Here, Plaintiff also challenges the quality of Floring's investigation. (*See* Doc.1-3 at 44–48 ¶¶ 42–58, 72–73.) Qualified immunity, rather than absolute immunity, protects government employees at the investigation phase. *See Beltran v. Santa Clara Cnty.*, 514 F.3d 906, 908 (9th Cir. 2008) (per curiam). Therefore, the Court will turn its attention to the application of qualified immunity.

2. *Qualified Immunity*

"[G]overnment officials performing discretionary functions [are entitled to] a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citations omitted); *see also Wood v. Moss*, 572 U.S. 744, 757 (2014) ("The doctrine of qualified immunity protects government officials from liability for civil damages . . . ."). This doctrine seeks to balance two important interests— "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity defenses. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. at 236. First, the Court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201; *see also Scott v. Harris*, 550 U.S. 372, 377 (2007). If there is no constitutional violation, then the inquiry ends and qualified immunity applies. *Ioane v. Hodges*, 903 F.3d 929, 933 (9th Cir. 2018). Second, the Court must determine whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201; *see also Wood*, 572 U.S. at 757 ("The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the

1 official violated a statutory or constitutional right, and (2) that the right was 'clearly
2 established' at the time of the challenged conduct.'") (quoting *Ashcroft v. al-Kidd*, 563
3 U.S. 731, 735 (2011)).  When properly applied, qualified immunity "protects 'all but the
4 plainly incompetent or those who knowingly violate the law.'" *Hernandez v. City of San*
5 *Jose*, 897 F.3d 1125, 1132–33 (9th Cir. 2018) (quoting *al-Kidd*, 563 U.S. at 743)).

6 Defendants argue that Floring, through his investigation, did not deprive Plaintiff of
7 any constitutional right or recommended substantiation of the allegation.  (Doc. 9 at 12.)
8 Defendants also contend that Floring's other actions, such as his deposition testimony and
9 his unwillingness to change his opinion once he saw additional information, could not and
10 did not impact the court's decision. (Doc. 21 at 8–9.)  Alternatively, Plaintiff contends that
11 Floring's allegedly defective investigation led to Plaintiff losing her right to make legal
12 decisions for her children and reduced her parenting time, thereby resulting in deprivation
13 of her fundamental right to parent her children.  (Doc. 16 at 15.)

14 To begin, the Court recognizes that the Fourteenth Amendment provides a
15 fundamental, constitutional right to parental care, custody, and control of children.  *Troxel*
16 *v. Granville*, 530 U.S. 57, 65–66 (2000).  Further, the First, Fourth, and Fourteenth
17 Amendments protect parents' relationships with their children from "unwarranted state
18 interference" and protects "familial association."  *Keates v. Koile*, 883 F.3d 1228, 1235–
19 37 (9th Cir. 2018).  Accordingly, Plaintiff does properly assert violations of an established
20 constitutional right.

21 That said, a review of the record shows that Floring's conduct at the time of the
22 alleged injury was ultimately reasonable.  Plaintiff alleges that Floring's investigation was
23 defective and that he gave false testimony—and that this led to the deprivation of Plaintiff's
24 rights.  (Doc. 16 at 15.)  But at the point he initiated his investigation and testified, Floring
25 had a report from a mandatory reporter, a report from Father that he had an audio/video
26 recording of his son disclosing possible acts of molestation, had reviewed O.P.'s forensic
27 interview, and had visited Plaintiff to interview regarding the allegations.  (*See* Doc. 1-3 at
28 43–44 ¶¶ 28–36.)  Given this evidence, Floring's decision to initiate an investigation and

testify at the family court hearing fits within the reasonability standard outlined in *Anderson*. 483 U.S. at 638. Further, his decision does not rise to the level of plain incompetence or a knowing violation of the law. *Hernandez*, 897 F.3d at 1132–33. Plaintiff cannot avoid Floring's qualified immunity defense merely by showing that he could have come to a different conclusion. *See Carroll v. Robinson*, 874 P.2d 1010, 1015 (Ariz. Ct. App. 1994). Floring's actions fall squarely within the bounds of qualified immunity.

Moreover, Floring's conduct did not deprive Plaintiff of her right to parent. Plaintiff seeks to pin all the alleged damages on Floring, yet he was only one piece of the puzzle. Here, Floring did not remove either child from Plaintiff's custody. He also did not reduce Plaintiff's parenting time or remove her legal decision making. Rather, he provided testimony at a family court hearing, which the judge took into consideration and entered an order after hearing all the testimony and reviewing all the evidence. (Doc. 20-1 at 2.) Finding otherwise would require this Court to determine that Floring's testimony was the *sole* basis of the family court's decision to modify Plaintiff's custody arrangement. That is simply not what occurred, and it is not a logical leap the Court will make.

Additionally, Plaintiff attempts to stretch this § 1983 claim to Floring's deposition testimony. Plaintiff asserts that: (1) Floring obtained additional facts between testifying in November 2021 and the August 2022 deposition; (2) this additional information should have changed his opinion; and (3) Floring should have taken steps to "rectify his findings" and not used the term "sexual contact" in his recommendation to substantiate the abuse/neglect. (Doc. 1-3 at 46 ¶¶ 52–54.) But this line of reasoning does not comport with the timeline established in the FAC. Again, Plaintiff alleges that Floring's investigation was defective and that he gave false testimony—thus leading to deprivation of Plaintiff's rights. (Doc. 16 at 15.) Plaintiff's initial investigation and the hearing in question occurred well before Floring obtained these additional facts or was deposed. As Defendants correctly point out, there are no allegations that the deposition testimony was ever shared with the family court. (Doc. 21 at 9.) Therefore, this testimony, along with the additional

information and the allegation that Floring should have rectified his findings, all came *after* the hearing at which Plaintiff alleges the harm occurred. Plaintiff has not sufficiently explained how any of Floring's actions violated her rights. Moreover, these subsequent actions also fall within the protection of qualified immunity because they reflect Floring's continuing investigation and not any incompetence or knowing violation of the law. *Hernandez*, 897 F.3d at 1132–33.

In short, absolute immunity applies to Floring's testimony at the family court hearing. Further, qualified immunity applies to the remainder of Floring's activities in this case—including his deposition testimony and his decision to recommend substantiation of the allegation. Given the application of these immunity doctrines, the Court will dismiss Count III with prejudice.

## IV.    CONCLUSION

For the reasons discussed above,

**IT IS HEREBY ORDERED granting** Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 9).

**IT IS FURTHER ORDERED dismissing** all Counts against all Defendants with prejudice.

**IT IS FURTHER ORDERED directing** the Clerk of Court to enter judgment consistent with this Order and terminate this case.

Dated this 5th day of February, 2024.

Honorable Susan M. Brnovich
United States District Judge